## Pérez *v*. Guánica Centrale.

## Apelación procedente de la Corte de Distrito de Ponce.

No. 547.—Resuelto en octubre 13, 1911.

Resoluciones Excepcionadas por la Ley—Excepciones Previas.—Aun cuando una resolución desestimando unas excepciones previas a la contestación a la demanda, no esté excepcionada formalmente, puede ser tomada en consideración por este tribunal cuando de los autos consten las excepciones previas y la resolución recaída, pues esa clase de resoluciones se consideran excepcionadas por ministerio de la ley.

Daños y Perjuicios—Responsabilidad de Patronos—Accidente—Negación de la Demanda.—Por el hecho de que un accidente ocurra en una de las casas de una corporación demandada, no está ésta necesariamente obligada a tener conocimiento de él hasta tal punto que le impida alegar su ignorancia en la contestación a una demanda de daños y perjuicios.

Id.—Notificación del Accidente por Correo—Responsabilidad de Patronos.— Cuando en una demanda de daños y perjuicios fundada en la ley sobre responsabilidad de patronos, alega el demandante que notificó al demandado el accidente expresando el sitio, y causa del mismo, por medio de un pliego por correo, debidamente franqueado y con la dirección adecuada, tales hechos son bastantes para haber cumplido con el requisito exigido por la ley, aunque en realidad el pliego no se hubiera recibido, y tal alegación no podía ser objeto por parte del demandado de admisión o negación en su contestación a la demanda.

Responsabilidad de Patronos—Alegación del Aviso del Accidente—Acción Ejercitada Dentro de 6 Meses.—Cuando se ejercita la acción de daños y perjuicios dentro de los 6 meses siguientes al accidente por el que se reclama, no es necesario de acuerdo con la ley sobre responsabilidad de patronos que el demandante alegue en su demanda haber notificado al patrono el accidente, pues tal aviso es ·únicamente necesario cuando la demanda se presenta fuera de dicho término.

Id.—Minoría de Edad del Demandante—Termino para Ejercer la Acción.— De acuerdo con el artículo 40 del Código de Enjuiciamiento Civil cuando el demandante es menor de edad, tiene de término hasta 6 meses después de llegar a su mayoría de edad, para formular su reclamación.

Eliminación de Defensas de la Contestación—Excepción Previa General contra Toda la Contestación.—Cuando algunas ·de las defensas alegadas en una contestación a la demanda son buenas y suficientes y otras nó, el remedio adecuado del demandante es pedir la eliminación de las defensas insuficientes, pero no interponer una excepción previa contra la totalidad de la demanda.

Pruebas—No Admisión de Cartas.—Para que este tribunal pueda apreciar la admisibilidad de unas cartas presentadas como prueba y rechazadas por el tribunal inferior, es necesario hacer constar el contenido de las mismas en el pliego de excepciones, y no haciéndose esto, tiene este tribunal que presumir que la resolución judicial fué correcta en este punto.

Id.—Cartas Relativas a Transacción del Pleito.—Son inadmisibles como prueba de la responsabilidad de un demandado, las cartas relativas a proposiciones de transacción hechas por el demandado, porque el hecho de que un liti-

gante haga ofertas de transacción o de arreglo antes del pleito o durante su tramitación, nunca puede estimarse por sí solo como un reconocimiento de su responsabilidad y a lo sumo lo que significa es que desea evitar el pleito o su continuación, por lo que tal clase de prueba nunca debe ser permitida por los tribunales.

RESPONSABILIDAD DE PATRONOS — ACCIDENTES — REQUISITOS ESENCIALES DE LA RESPONSABILIDAD.—Según la ley de marzo 1, 1902 relativa a la responsabilidad de los patronos, es condición precisa para que los empleados puedan reclamar indemnización de ellos por los perjuicios que sufren en sus servicios, que cuando resultó la lesión corporal estuvieran ejercitando en su ocupación el debido celo y diligencia al recibir el daño y que el suceso se haya originado por alguna de las tres causas que determina la sección 1ª. de dicha ley.

ID.—SIGNIFICACIÓN DE LA PALABRA "OBRAS"—EDIFICIOS EN CONSTRUCCIÓN.— Dentro del significado de la palabra "obras" tal como la emplea la Ley de Responsabilidad de Patronos de marzo 1, 1902, están incluídos los edificios en construcción de un demandado, en donde ocurrió el accidente por el cual reclama el demandante.

ID.—DEFECTO DEL EDIFICIO—NEGLIGENCIA DEL PATRONO O DE SUS EMPLEADOS.— Para que un trabajador pueda reclamar daños y perjuicios por lesiones sufridas como resultado de un accidente ocurrido en un edificio en construcción del demandado, es necesario que el demandante pruebe que tal edificio tenía defectos y que tales defectos habían sido causados o no descubiertos, o no remediados por negligencia del patrono o de sus empleados.

ID.—SITIO SEGURO PARA LOS EMPLEADOS—OBLIGACIONES DEL PATRONO—TRABAJOS PELIGROSOS.—Es cierto que como regla general el patrono tiene la obligación de proporcionar a sus empleados sitio razonablemente seguro en que puedan trabajar y debe ejercitar un razonable cuidado en el cumplimiento de este deber, pero esta regla no se aplica cuando el trabajo que realizan los empleados es de tal naturaleza que por su labor está cambiando constantemente de peligro, cuando el sitio se convierte en peligroso sin falta del patrono o sin su consentimiento.

ID.—DEFECTOS OCULTOS.—Un principal no es responsable de los daños sufridos por sus empleados motivados por defectos ocultos de que estuviera ignorante y que no pudo conocer ejercitando un razonable cuidado.

Los hechos están expresados en la opinión.

Abogado del apelante: Sr. *José A. Powentud.*

Abogado del apelado: Sr. *E. S. Paine.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

La demanda en este caso presentada en la Corte de Distrito de Ponce el 19 de febrero de 1909, alega sustancialmente que en 9 de octubre de 1908, la corporación demandada era dueña de ciertos edificios y casas situados en la plaza de la referida central, y que el demandante Casto Pérez, de diez y nueve años de edad, era uno de sus empleados como ayu-

dante mecánico, siendo su deber ayudar a practicar arreglos y reparaciones en el sitio y lugar que por la demandada o sus empleados se le ordenase; que en dicho día de octubre recibió orden de ayudar a un mecánico a barrenar unos hierros colocados en el techo de una de las mencionadas casas, y mientras con el debido celo y diligencia cumplía su deber, al pararse con el cuidado necesario sobre una plancha de zinc que formaba el techo de dicha casa, cayó al suelo junto con la plancha, la que se salió de su sitio y cayó por la negligencia, descuido y abandono de la demandada, sufriendo como consecuencia de esa caída, la ruptura del antebrazo izquierdo así como grandes dolores físicos, siendo la causa directa del accidente la negligencia de la demandada; que el demandante notificó el accidente por escrito a la demandada, dentro del término legal, y que ha sufrido daños y perjuicios por valor de novecientos noventa y nueve dollars, en cuya cantidad pide se condene a la corporación demandada en concepto de indemnización y al pago de las costas.

La contestación presentada por la demandada fué excepcionada por el demandante, excepción que la corte inferior desestimó, procediéndose en consecuencia a la celebración del juicio, después del cual la corte dictó su sentencia de 7 de marzo de 1910, por la que declara que los hechos y la ley estaban a favor de la demandada y en contra de la parte demandante y desestimó la demanda con las costas.

Habiendo apelado el demandante, presentó en este Tribunal Supremo la transcripción de los autos y su alegato escrito, sin que la parte apelada presentara alguno entonces.

Cuatro son los errores alegados como fundamento de la apelación, siendo los siguientes:

A. Que la corte inferior cometió error al desestimar la excepción previa que el demandante dedujo contra la contestación del demandado.

B. Que cometió error al negar la admisión de ciertas cartas que como prueba presentaba el demandante.

C. Que la sentencia es contraria a la prueba.

D. Que también es contraria a la ley.

Aun cuando la orden desestimando la excepción previa del demandante no fué excepcionada formalmente, sin embargo, podemos tomarla en consideración porque la excepción y resolución aparecen en la transcripción de las autos, lo que equivale a haberla incluído en un pliego de excepciones, ya que en esa clase de resoluciones no es indispensable que se tome una excepción formal contra ellas, porque son de las que por la ley se consideran excepcionadas, según el artículo 213 del Código de Enjuiciamiento Civil.

Sentado esto, podemos examinar el primer fundamento de la apelación, basado en haber sido erróneamente desestimada la excepción previa a la contestación.

En cuatro motivos se basó la excepción previa, a saber:

1. Que la contestación de la corporación demandada no aducía hechos suficientes para constituir una oposición a la demanda.

2. Que la contestación es ininteligible, dudosa y evasiva porque la demandada debía necesariamente conocer la manera en que el accidente ocurrió, pues tuvo lugar en la plaza de la Guánica Central; y porque también debe conocer la notificación escrita que del suceso hizo el demandante.

3. Que no expone hechos suficientes para constituir una oposición a la demanda la defensa de que si Casto Pérez sufrió los daños que alega, se causaron y resultaron de los riesgos del empleo que tenía, los que fueron asumidos por el.

4. Que tampoco aducen hechos suficientes como defensas, las basadas en que el demandante era empleado como mecánico de la demandada y de existir los daños, éstos no fueron causados por defectos en las vías, obras o maquinarias de la demandada, que resultaron, no fueron descubiertos o remediados por ella o por causa de su negligencia, o de sus empleados, siendo debidos únicamente a la negligencia y falta de cuidado del demandante.

Conociendo los fundamentos de la excepción previa, vea-

mos ahora si fué acertada o erróneamente desestimada por la corte inferior.

La contestación contiene una negación de la manera en que el accidente tuvo lugar, según lo relata la demanda, que éste ocurriera por culpa o negligencia de la demandada, así como que el demandante procediera en aquella ocasión con el debido celo y diligencia en el cumplimiento de su deber, constituyendo estas negaciones a esos hechos esenciales de la demanda, una buena oposición.

El segundo motivo de la excepción desestimada tiene tan poco fundamento como el primero.

Una de las alegaciones de la demanda relata la manera en que el accidente ocurrió, atribuyendo la causa directa e inmediata del mismo a negligencia de la demandada; y la siguiente alegación expresa que tal suceso lo notificó el demandante a la demandada, por escrito, y dentro del término que marca la ley. Ambas alegaciones fueron negadas por la demandada, basando la segunda en falta de informes necesarios para basar una creencia.

En cuanto a la primera de esas alegaciones, el apelante sostiene que por haber ocurrido el hecho en la plaza de la Guánica Central, debía necesariamente conocerlo la demandada; y en cuanto a la segunda, que habiendo sido enviada la notificación por correo, no puede tampoco negar este hecho, por lo que las negaciones mencionadas hacen ininteligible, dudosa, incierta y evasiva la contestación.

No podemos estar conformes con el demandante y apelante en que por el hecho de que el accidente ocurriera en una de las casas de la corporación demandada, venga ésta necesariamente obligada a conocerlo y que le impida alegar su ignorancia.

No hay ley alguna que imponga a una persona o corporación el deber de conocer todo lo que suceda en o alrededor de sus propiedades, a tal punto que no pueda alegar que lo desconoce.

Respecto al otro extremo, o sea la notificación hecha por

correo, la cuestión es distinta porque si se alega que la notificación con respecto al accidente, sitio y causa de él, se envió a la corporación demandada en un pliego por correo, debidamente franqueado y con la dirección adecuada, entonces, esto es bastante para haber cumplido con el requisito exigido por la ley, aunque en realidad el pliego no se hubiera recibido, y no era una alegación que había de admitirse o negarse en la contestación.

Pero a más de esto, cuando una contestación contiene cualquiera defensa buena, como ocurre en el caso presente, no puede sostenerse una excepción previa dirigida contra toda la contestación en general.

La cuestión referente a la alegación del aviso y la alegación de la demandada correspondiente a ella, no es importante en este asunto, porque habiendo sido presentada la demanda dentro de los seis meses siguientes al accidente por el que se reclama, no era necesario alegar tal aviso, requerido únicamente cuando la reclamación es posterior a ese término; y además, porque siendo el demandante menor de edad, tenía, de acuerdo con el artículo 40 del Código de Enjuiciamiento Civil, hasta seis meses después de llegar a su mayoría de edad para formular su reclamación. El propio apelante reconoce que era innecesario el aviso.

Resueltos los dos primeros fundamentos de la excepción previa, dirigidos contra la contestación en general, y estimando que la corte inferior estuvo acertada en su manera de apreciarlos, se hace innecesario examinar los otros dos fundamentos dirigidos contra las defensas alegadas por la demandada, porque si prescindiendo de éstas la contestación era suficiente, y así lo entendemos, aunque las defensas fueran malas o improcedentes, no por eso podía prosperar la excepción previa del demandante, y en todo caso a lo que tendría derecho era a que tales defensas fueran eliminadas de la contestación.

En resumen, en cuanto al primer motivo de error, la ex-

cepción previa a la contestación estuvo propiamente desestimada por la corte inferior y no existe el error alegado.

El segundo error aducido por el apelante se basa, según hemos antes consignado, en la exclusión de ciertas cartas que presentó como evidencia y que la corte le rechazó.

Ante todo hemos de hacer constar que el contenido de dichas cartas no ha sido incluído en ningún pliego de excepciones como es necesario, para que conociéndolo pudiéramos llegar a una conclusión exacta respecto a su admisibilidad en el juicio. No habiéndose hecho así hemos de presumir que la resolución judicial fué correcta en este punto.

Pero, si cual podemos deducir de las contestaciones de los testigos y de las manifestaciones del abogado del demandante, esas cartas se referían una a propuestas de transacción hechas por la demandada y otra al aviso que del accidente se dió a la demandada, también llegaremos a la conclusión de que fueron propiamente rechazadas por la corte inferior, y por ello no cometió error, porque el hecho de que un litigante haga ofertas de transacción o de arreglo antes del pleito o durante su tramitación, nunca puede estimarse por sí solo como un reconocimiento de su responsabilidad, y a lo sumo lo que significa es que desea evitar el pleito o su continuación, por lo que tal clase de prueba nunca debe ser permitida por los tribunales, según hemos resuelto en el caso de *Rufino Colón* v. *Guánica Central,* en 7 de junio de 1910.

En cuanto a la otra carta referente a la notificación o aviso del accidente, según antes hemos consignado, no era un hecho esencial en vista de haberse presentado la demanda dentro de los seis meses del accidente y la negativa de su admisión no ha perjudicado al demandante.

Mas, aparte de estas razones, hay un hecho común para esas dos cartas, que las hacía inadmisibles, cual es, que no se justificó que la persona que las firmaba era un representante de la corporación demandada.

Hemos tratado separadamente los dos primeros errores alegados como motivos del recurso, mas los otros dos pode-

mos estudiarlos y los examinaremos conjuntamente por la íntima relación que guardan entre sí.

Desestimando la sentencia de la corte inferior, la pretensión del demandante y alegandose ahora por éste que es contraria a las pruebas, veamos si éstas sostienen las alegaciones de la demanda.

Ciertamente, de la evidencia aportada al juicio resulta que en 9 de octubre de 1908, el demandante Casto Pérez tenía diez y nueve años de edad y desde unos cuantos meses antes trabajaba como ayudante mecánico con la demandada ''Guánica Central,'' corporación organizada bajo las leyes de New Jersey, de quien era empleado mediante un salario de setenta y cinco centavos diarios: que el mencionado día se le ordenó que barrenara ciertos hierros del techo de una casa perteneciente a la demandada, para cumplir lo cual pasó en cuatro pies por una parte de ese techo y al pararse sobre una de las planchas de zinc del mismo cayó al suelo juntamente con dicha plancha desde una altura de treinta pies, por consecuencia de cuya caída sufrió la fractura del antebrazo izquierdo y por ella estuvo privado de trabajar hasta la fecha del juicio; que la plancha de zinc que cayó con el demandante no estaba sostenida sino con soldaduras por un solo lado, en cuya condición la había dejado el carpintero que el día antes había quitado otras inmediatas, pues se trataba de hacer una claraboya, siendo el trabajo de dichos carpinteros a la vista de todos y por todos pudiendo ser apreciado, en cuyo sitio el demandante y su jefe habían estado el día antes; por la manifestación del testigo Finch de quien era ayudante Castro Pérez, resulta claro que los carpinteros trabajaban en un sitio visible en dicho techo el día antes, y podían ser apreciados los efectos de sus trabajos; que ellos habían quitado algunas planchas de zinc, pero no aquella de donde cayó el demandante; también es evidente que otras personas pasaron con seguridad sobre esa plancha de zinc sin haber caído; no aparece de la evidencia que nadie tuviera motivo para creer que el pasar por esa plancha de zinc fuera un peligro, ni tampoco que los carpin-

teros fueran negligentes o incompetentes, o empleados de la corporación; así como tampoco que esa manera de dejar la plancha de zinc no fuera la corriente.

La evidencia no revela la clase de negocios a que la Guánica Central se dedicaba, a qué destinaba la casa en que el accidente ocurrió, ni que fuera su negocio reparar techos, o tuviera un negocio especial con relación a techos que no fuera igual al de cualquier propietario de una casa. Nadie advirtió al demandante que dicha plancha estaba floja, ni se puso cartel alguno avisando el estado defectuoso del techo, ni aun el mecánico a quien ayudaba el demandante sabía los defectos de la expresada plancha de zinc.

Siendo estos los hechos esenciales resultantes de la evidencia presentada en el juicio, veamos ahora si ellos aparejan responsabilidad para la corporación demandada, dueña de la casa en que el accidente ocurrió.

Según la ley de 1 de marzo de 1902, relativa a la responsabilidad de los patronos, es condición precisa para que los empleados puedan reclamar indemnización de ellos por los perjuicios que sufran en su servicio, que cuando resultó su lesión corporal estuvieran ejercitando en su ocupación el debido celo y diligencia al recibir el daño.

Aun cuando este extremo fué negado por la corporación demandada, sin embargo la prueba claramente demuestra, que el demandante y apelante no sufrió el daño por el que reclama, por su descuido o negligencia, y tampoco ha sido cuestión muy debatida por el apelado.

Pero es, que según esa ley, no basta que el accidente ocurriera sin negligencia o descuido del empleado, sino que además es indispensable, que el suceso se haya originado por alguna de las tres causas que determina la sección primera de la misma ley, correspondiente a la sección 322 de los Estatutos Revisados de Puerto Rico, los que podemos sintetizar en la siguiente manera: 1. Por defecto en las vías, edificios o máquinas de la demandada, que fueron originados, o no descubiertos, o no remediados por negligencia del patrono o

de sus empleados; 2. Por negligencia del superintendente del patrono; 3. Por negligencia de un empleado de ferrocarril.

De estos tres casos el último no es aplicable porque no se trata de accidente por negligencia de empleados de ferrocarriles; el segundo tampoco porque como textualmente dice la ley, se refiere al daño sufrido "por causa de la negligencia de cualquier persona al servicio del patrono, encargado de la superintendencia como su solo o principal deber"; y no hay alegación en la demanda ni prueba de que hubiera persona alguna encargada de aquella obra o reparación y cuyo exclusivo o principal deber fuera la superintendencia de la misma. Los únicos empleados que trabajaban con el demandante eran compañeros de trabajo.

Réstanos, pues, el primer caso.

Es claro que ni la casa ni el techo en que trabajaba el demandante cuando ocurrió el accidente que causó su daño, pueden clasificarse como vías de comunicación porque no es ese el fin a que se destinan, pero sí dentro del significado de la palabra "obras," por más que lo contrario sostenga la parte apelada.

Una casa destinada a los negocios de una compañía siempre ha tenido ese significado, como puede verse en The Century Dictionary and Cyclopaedia, Vol. VIII, página 697, No. 9, y en la página 852, tomo 29, de la American Cyclopædia of Law, y también en la jurisprudencia de las cortes americanas.

En la obra "Words and Phrases Judicially Defined," vol. 8, página 7524, encontramos, que en el caso de *South St. Joseph Land Co.* v. *Pitt*, 114 Mo., 135, se define esa palabra diciendo que es algunas veces usada para significar un establecimiento para manufacturas o para realizar cualquier fin industrial, y que generalmente en el plural incluye todos los establecimientos, maquinarias, etc., usados en dichos trabajos. En el caso de *Conroy* v. *Inhabitants of Clinton*, 158 Mass., 318, citado en la misma obra, se consigna que la palabra "obras" tal como es usada en el Estatuto 1888, capítulo

270, párrafo primero, autorizando acciones por la muerte de un empleado causada por "razón de cualquier defecto en el estado de las vías de comunicación, obras o maquinarias que se usen en relación con la empresa del patrono," significa un trabajo terminado y no aquéllos en el curso de su construcción. Las palabras de ese estatuto son iguales a las del nuestro.

Las misma doctrina se aplicó en el caso de *Hanna* v. *South St. Joseph Land Co.*, 126 Mo., 1, 13, 28, S. W. 652.

El edificio en que ocurrió el accidente es, pues, una de las obras de la corporación demandada, pero como no se ha demostrado por la prueba, que tuviera defecto alguno ni por tanto que fuera causado o no descubierto o no remediado por negligencia del patrono o de sus empleados, es claro que de acuerdo con la sección 322, caso primero de los Estatutos Revisados de Puerto Rico, el demandante no tiene derecho a reclamar nada de la demandada.

Es cierto que como regla general el patrono tiene la obligación de proporcionar a sus empleados sitio razonablemente seguro en que puedan trabajar y debe ejercitar un razonable cuidado en el cumplimiento de este deber, pero esta regla no se aplica cuando el trabajo que realizan los empleados es de tal naturaleza que por su labor está cambiando constantemente de condición, cuando los peligros son pasageros o cuando por negligencia de los compañeros el sitio se convierte en peligroso, sin falta del patrono o sin su conocimiento. (Véase 26 Cyc., 1113.)

Además, si lo que originó la caída y daño del demandante fué que la plancha de zinc con la que cayó al suelo estaba soldada solamente por un lado y no con remaches y esto fuera un defecto, lo que no se ha demostrado, no habiéndose tampoco probado que de él tuviera conocimiento el patrono, resultaría, que tampoco sería por ello responsable la corporación demandada, porque un principal no es responsable de los daños sufridos por sus empleados motivados por defectos ocultos de que estuviera ignorante y que no pudo conocer ejercitando

un razonable cuidado. Esta doctrina está sostenida en el caso de *Mars* v. *Del. & Hud. Canal Co.*, 54 Hun., 625, en el que se expresa que una parte solamente es responsable por negligencia, cuando deja de tomar las medidas necesarias contra aquellos peligros que razonablemente puede esperarse que ocurran, y que pudieron ser previstos con un ordinario cuidado. También en el caso de *East St. Louis Packing & P. Co.* v. *Hightower,* 92 Ill., Rep., 139, se estableció que un empleado no puede recobrar daños de su principal, por perjuicios sufridos en el cumplimiento de su deber, o por algún defecto en la maquinaria usada sin que se demuestre que su patrono tenía conocimiento del mismo, o que pudo haber tenido conocimiento 'de él usando razonable diligencia. En el caso de *Smith* v. *Whittier,* 30 Pac. Rep., 532, se dijo que como la negligencia es la violación o desatención de algún deber u obligación que alguno tiene para con otro, es evidente que un conocimiento de los hechos de los cuales nace la obligación, es un elemento esencial para determinar si hubo negligencia; y que si bien en ciertos casos tal conocimiento es presumido, en otros, es el deber de la parte que imputa negligencia, el demostrar que tal conocimiento se tuvo.

En el presente caso se estaban haciendo claraboyas en el techo de zinc de uno de los edificios de la demandada, para lo cual era necesario remover algunas de las planchas de que estaba formado, siendo esta clase de trabajo la que motivó la caída del demandante y no la mala condición del techo. En otras palabras, la plancha de zinc cayó con el demandante, como consecuencia de la reparación u obra que en el techo se estaba haciendo; y cuando un empleado está encargado de trabajos de esta índole que son objeto de cambios constantes al pasar sucesivamente de una condición a otra, que muchas veces resultan peligrosas por la misma naturaleza de las obras, el operario asume el riesgo ordinario y corriente a las mismas, como también asume aquellos cuya existencia le es conocida o que pudo conocer ejercitando un razonable cui-

dado, a menos que haya convenido lo contrario.   (Véase 26 Cyc., 1117.) ·

En el caso de *Schneider* v. *Am. Bridge Co.,* 31 App. Cases, 426, el Juez, Sr. Shepherd, se expresó como sigue:

"Según los principios de la ley común, la evidencia fué insuficiente para demostrar negligencia por parte del demandado.   Un gran edificio estaba en construcción.   El trabajo principal del demandante era en un extremo del mismo remachando trabazones con el cuartón de afuera.   El lugar de su trabajo era en un andamio donde al parecer él estaba razonablemente seguro bajo las condiciones regulares de su trabajo especial.   No resulta de la evidencia que él o sus inmediatos compañeros fueran requeridos o se esperaba que pasaran sobre la armadura de hierro para llegar al andamio dispuesto para ellos, o para procurarse utensilios para el cumplimiento de su trabajo, o que el demandado emprendió el trabajo de colocar tablones a través de las vigas con el fin de facilitar a cualquiera de sus empleados pasar cerca de la armadura de hierro.   Cómo sucedió que el tablón llegó a estar colocado sobre las vigas, o por quién, o con qué objeto, no se ha demostrado.   Por todo lo que resulta, los tablones pudieron haber sido traídos y colocados por algunos de los trabajadores ocupados en la obra, por su propia conveniencia y sin que nadie se lo indicara, o pueden haber sido tablones que sobraban y que habían quedado sobre el andamio.   'La obligación de un patrono de proveer de sitios razonablemente seguros para el trabajo de sus empleados, no le impone la obligación hacia ellos de conservar el edificio en el cual están trabajando en una condición segura en cada momento de su trabajo, ya que su seguridad depende del debido cumplimiento del trabajo." (*Armour* v. *Hahn,* 111 U. S., 313, 318; 28 L. ed. 440, 441; 4 Cup. Ct. Rep., 433.)

Con respecto a la falta de responsabilidad de un patrono por accidentes que suceden sin que hubiera motivos para esperarlos, dijo el Juez Cooley lo siguiente, en el caso de *Sjogren* v. *Hall,* 53 Mich. Rep., 274:

"El demandante funda su reclamación en la negligencia de los demandados por dejar descubierta la rueda.   Se probó en el juicio que con un pequeño gasto se hubiera podido construir al lado de la rueda un aparato de protección que hubiera hecho imposible que el accidente ocurriera, y se alega que la falta de hacer tal construcción era un descuido tan culpable de la seguridad de aquellos que estaban

empleados con los demandados, que los hacía responsables por todas las consecuencias. Si el accidente que ocurrió era uno que en realidad era probable que ocurriera, la consecuencia probable de una persona que trabajaba al lado de la rueda era que fuera cogida por ella como lo fué el demandante—habría entonces fundamento para insistir en este argumento. Pero no puede decirse que el accidente sea uno que aun una persona prudente probablemente hubiera podido preveer. * * *.

"Lo inexperado ha ocurrido, y solamente tenemos que ver si los demandados fueron negligentes en no tomar las medidas necesarias para evitar dicho accidente * * *.

"Un accidente análogo, y con las mismas serias consecuencias, podría ocurrir en casi todas partes, en cualquier taller de maquinaria o en una hacienda así como en una factoría, y después que hubiera ocurrido inmediatamente se hubiera visto que había podido evitarse. Pero el hecho de que pudiera evitarse, no prueba que hubiera falta en no anticiparse y tomar las medidas de precaución necesarias para evitarlo. Si un peón de una finca se cae de una hacina de heno la caída no demuestra que el dueño de la finca fuera culpable por no poner una cerca a dicha hacina. Un hombre que dé un traspiés en una herrería puede ser cogido en su mano o cabeza por el martillo grueso de dicha herrería, pero de ahí no se deduce que haya ninguna negligencia en el cumplimiento de su deber por parte del herrero al dejar descubierto el martillo. Si existe alguna obligación por parte del propietario en estos casos, ésta es únicamente evitar los daños probables; pero no se extiende dicha obligación a exigir a dicho propietario que haga imposible que resulten tales accidentes. * * *. La prueba muestra un caso de simple accidente, sin que exista más negligencia en una parte que en la otra."

Y nosotros podemos decir en este caso como el Juez Cooley, que la evidencia comprueba únicamente un caso de puro accidente, del que no puede ser responsable la corporación demandada, por lo que debe ser confirmada la sentencia de la corte inferior que la absolvió de la reclamación del demandante Casto Pérez.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y del Toro.

El Juez Asociado Sr. MacLeary, firmó haciendo constar

estar conforme con la sentencia, pero no con el dictamen en que se funda, habiendo emitido una opinión concurrente separada.

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ ASOCIADO
SR. MACLEARY.

En el presente caso los cinco jueces de esta corte son de opinión de que la sentencia dictada por la corte inferior debe ser revocada. Esta resolución se había tomado desde hacía tiempo, habiendo quedado esta cuestión definitivamente resuelta. Pero la opinión que había escrito el primer ponente, o sea el que suscribe esta opinión, no tuvo la buena suerte de encontrar la completa aprobación de los otros jueces en todos sus particulares. Por tanto, se hizo necesario que la opinión oficial del tribunal fuera redactada por algún otro juez. Sin embargo, mi propia opinión que ya hacía algún tiempo que estaba preparada, me servirá, haciendo algunas alteraciones, para formular un voto concurrente, y en tal forma será reproducida y presentada con ésta. Esa opinion, excepto en lo que hace referencia a la vigencia de las leyes del Congreso que en la misma se discuten, parece, por el uso liberal que de la misma se ha hecho en la preparación de la "opinión de la corte," que ha sido aprobada en casi todos sus detalles por mis compañeros, por lo que debo expresar mi gratitud. Mi opinión original es substancialmente como sigue:

La presente es una acción entablada en reclamación de daños y perjuicios sufridos a consecuencia de lesiones personales. El demandante, Casto Pérez, estaba empleado con la demandada, la Guánica Centrale, como ayudante mecánico, ganando como tal setenta y cinco centavos diarios. Por virtud de su empleo tenía que trabajar con metales, y ayudar al mecánico a hacer reparaciones y cambios en los techos de las casas, propiedad de la Central, y dedicadas al negocio de la misma. El día 9 de octubre de 1908, en el ejercicio de los deberes inherentes a su cargo, subió al techo de una de las

casas pertenecientes a la central demandada, y mientras se movía de un sitio a otro, en el referido techo, pasó por una plancha de zinc que estaba floja, cayendo el demandante junto con ella en un piso a unos treinta pies de distancia, sufriendo dicho demandante por virtud de dicha caída, la fractura del antebrazo izquierdo, y recibiendo lesiones internas, que temporalmente le hicieron perder el conocimiento. Cuando volvió en sí, se encontró en el hospital, donde recibió asistencia médica por nueve días. Estuvo impedido de trabajar, en absoluto, hasta la fecha en que se presentó la demanda, día 19 de febrero de 1909, y aun hasta la fecha en que se celebró el juicio ante la corte de distrito, en 20 de diciembre del mismo año.

La demanda presentada en este caso, está redactada en la forma usual, y aunque se formuló excepción previa a la misma, dicha excepción fué retirada posteriormente, presentando la demandada su contestación, con arreglo a los hechos del caso. El demandante a su vez, formuló excepción previa a la contestación, cuya excepción fué declarada sin lugar, y el caso siguió adelante. En el juicio se examinaron varios testigos de ambas partes, y habiendo el caso quedado sometido a la consideración de la corte, ésta dictó finalmente su sentencia en 7 de marzo del año próximo pasado, declarando que la ley y los hechos estaban a favor de la demandada, e imponiendo las costas al demandante.

Contra esa sentencia, el demandante interpuso a su debido tiempo recurso de apelación para ante este tribunal, y presentó una transcripción de los autos el día 27 de abril de 1910. En los autos que aquí se han presentado, se encuentra el alegato del apelante, no habiendo la apelada presentado alegato alguno en la primera vista. Ninguna de las partes estuvo representada en la primera vista ante este tribunal, que tuvo lugar en 4 de octubre de 1910. La corte por su propio acuerdo, ordenó la celebración de una segunda vista que se llevó a efecto en 22 de noviembre, 1910, habiendo entonces presentado su alegato el apelado, si bien ninguna de las

partes informó oralmente, para cuyo fin se había ordenado principalmente la nueva vista. Se celebró la vista el día señalado quedando el caso debidamente sometido a la consideración del tribunal, y nuevamente, en 31 de enero del presente año la corte, en vista de la importancia de las cuestiones de derecho envueltas en este caso, y de la llegada del nuevo juez de este tribunal, señaló día para otra vista del mismo, indicando ciertas cuestiones con respecto a las cuales deseaba que las partes informasen oralmente. Esa vista se celebró en 3 de abril último ante el tribunal en pleno, y ambas partes presentaron alegatos, informando oralmente únicamente el abogado de la apelada. El caso se encuentra ahora sometido a la consideración y resolución de este tribunal, tal como ha sido finalmente presentado.

Cuatro cuestiones surgen de los autos según se encuentran consignadas en las varias asignaciones de errores. Son como siguen:

A. ¿Cometió error el tribunal al desestimar la excepción previa presentada por el demandante a la contestación de la demandada?

B. ¿Cometió error el tribunal al excluir de la prueba las cartas mencionadas?

C. ¿Es la sentencia contraria a la prueba?

D. ¿Es la sentencia contraria a la ley?

En relación con los errores asignados, y que se encuentran comprendidos en la subdivisión D. debemos también discutir y resolver las cuestiones que la corte ha presentado a los abogados de las partes en la tercera y última vista y que tratan de;

1ª. La aplicación de las leyes sobre responsabilidad de patronos a los hechos consignados en los autos.

2ª. Los riesgos de los peligros inherentes al empleo, asumidos por el demandante.

3ª. La obligación del patrono de suministrar al empleado un sitio seguro para su trabajo.

Examinaremos todas estas cuestiones en el orden en que

han sido presentadas por el apelante.    Consideremos en primer término la orden declarando sin lugar la excepción previa del demandante. · Esta resolución del tribunal no tenía que ser excepcionada formalmente, pues según el artículo 213 del Código de Enjuiciamiento Civil, una providencia admitiendo o desestimando una excepción previa, se considera en esta corte como exceptuada, no siendo, por consiguiente, necesario, incluirla en el pliego de excepciones; pero cuando la misma aparece en los autos, puede ser revisada en la apelación como si estuviera incluída en dicho pliego de excepciones.    (Véase el Código de Enjuiciamiento Civil, pág. 241.)

Esta excepción previa se funda en cuatro motivos, a saber:

1°. Que la contestación no expone hechos suficientes para constituir una buena defensa u oposición a la demanda.

2°. Que dicha contestación es ininteligible, incierta dudosa y evasiva, puesto que los hechos quinto y sexto de la demanda· deben ser necesariamente conocidos por la demandada.

3°. Que la segunda defensa contenida en esa contestación, o sea, negligencia exclusiva o contribuyente por parte del demandante, no expone hechos bastantes para constituir una buena defensa u oposición a la acción ejercitada.

4°. Que las defensas tercera y cuarta, contenidas en la contestación, tampoco aducen hechos bastantes para determinar una buena defensa contra la acción deducida por el demandante.

Con tal que la contestación contenga cualquiera defensa buena, no puede sostenerse la excepción previa cuyos dos primeros párrafos van dirigidos contra toda la contestación en general; y una simple negación de las alegaciones esenciales de la demanda, es suficiente para obligar al demandante, a sostener su derecho mediante la prueba, no siendo absolutamente necesarias las defensas especiales.    En la contestación se ha alegado una defensa suficiente, independientemente de las defensas especiales en que sè apoya la demanda, y debe desestimarse la excepción previa, aunque las excepciones especiales estén bien fundadas y hagan necesaria la

eliminación de aquellos párrafos de la contestación, contra las cuales van dirigidas. En efecto, una moción solicitando que se eliminen o supriman los párrafos de los cuales se alega que contienen defensa defectuosas, hubiera sido una medida más acertada.

Ninguno de estos fundamentos de excepción tales como han sido presentados, nos parece que exija especial consideración a excepción del segundo. Y la primera parte del mismo, en lo que se refiere al conocimiento necesario por parte de la demandada de lo que ocurrió en la central, aparece claramente que no está bien fundada. Puede haber muchas cosas que estén constantemente sucediendo allí, y que sean desconocidas para la compañía, o para sus empleados o agentes; y la ley no exige a una corporación que tenga conocimiento o noticia de cada incidente que ocurra en o alrededor de su establecimiento o lugar de negocio. Pero en cuanto al aviso dado por el demandante a la demandada, de las lesiones sufridas por dicho demandante, en el cumplimiento de sus deberes, como tal empleado, el caso es tal vez algo diferente. Si tal aviso fué realmente recibido debe presumirse que el demandado lo hubiera sabido, y, por lo general, una simple investigación indicaría el hecho de ser cierto que tal aviso no fué dado en realidad a la demandada. Pero aun en el caso de que realmente la demandada no hubiera recibido aviso alguno con respecto al tiempo, sitio y causa de las lesiones sufridas por el demandante, si dicha demandada tuvo noticia o aviso de lo ocurrido, aunque por un medio indirecto, sería suficiente para la ley. Enviar por correo un escrito debidamente preparado y dirigido al demandado, en un sobre con el debido franqueo y adecuada dirección, constituirá debido aviso a la compañía ya fuere dicho escrito recibido o nó por la compañía de manos del cartero. Por consiguiente, esta es una de esas alegaciones de la demanda que no fué necesario que se admitiera o negara categóricamente en la contestación. Las alegaciones de la contestación sobre este punto son claramente suficientes.

Pero prescindiendo de todo esto, ¿era esencial la cuestión referente al aviso para la decisión del caso, y por consiguiente, en el supuesto de que la resolución de la corte hubiera sido errónea, tal error cometido al desestimar la excepción previa sería perjudicial en este punto? El mismo apelante alega que era innecesario el aviso. Si esto es así, la corte al desestimar la excepción, habría cometido simplemente un error que no perjudica al demandante, si es que cometió error en este punto, y nada más. Según el artículo 327 de los Estatutos Revisados, no puede establecerse ninguna acción de esta clase sin darse aviso al patrono, del tiempo, sitio y causa de la lesión, dentro de los treinta días siguientes de haberse sufrido dicha lesión, a no ser que la acción se establezca dentro de los seis meses siguientes a la fecha en que ocurrió el accidente. Estos requisitos son alternativos. Aparece de los autos que este pleito fué iniciado dentro de los cinco meses siguientes al suceso, no siendo, por lo tanto, necesario notificar al patrono, ni probar que se había dado aviso al mismo, conforme lo exige la ley anteriormente citada. Pero, siendo menor el demandante, tenía con arreglo al artículo 40 del Código de Enjuiciamiento Civil, seis meses después de haber llegado a su mayor edad, para establecer su acción, habiendo por lo tanto estado dentro del término, al presentar esta demanda por conducto de su padre, durante su menor edad. Puesto que el estatuto considera que la interposición de la demanda dentro del tiempo fijado en el mismo, es equivalente a la notificación que la ley exige en la alternativa, dicha notificación era innecesaria, no teniendo, por consiguiente, importancia alguna el hecho de si hubo o nó tal notificación. De donde se ve claramente que el error cometido por la corte, al desestimar la excepción previa no hubiera sido un error perjudicial, y, por consiguiente, no hubiera hecho necesaria la revocación de la sentencia, aun cuando la misma hubiera sido errónea, según alega el apelante. Errores del tribunal sentenciador que no sean perjudiciales para las partes, no hacen necesaria la revocación de la sentencia. .(Véase el caso de *Belber* v.

*Calvo,* resuelto por esta corte en 19 de mayo de 1910, y los casos allí citados.   También el caso de *Auburn O. H. & P. Assn.* v. *Hill,* 113 Cal., 328.)   Por lo tanto, no puede sostenerse el primer error señalado.

Pero aun cuando la corte hubiera cometido error al desestimar la excepción de la demandada, tal error debe considerarse por otro motivo como no perjudicial; puesto que el caso fué ampliamente presentado por el demandante, en el acto del juicio, y toda la prueba legal presentada por el mismo, fué admitida; y estando virtualmente basada la resolución de la corte en la idea de que el demandante no había probado su derecho, y no en ninguna defensa afirmativa hecha por la demandada, no resultó perjuicio alguno para la causa del demandante.   Según se presenta el caso ante esta corte, las resoluciones del tribunal inferior con respecto a las alegaciones, son inmateriales para nuestra decisión, y no requieren ulterior consideración.

Ahora debemos considerar el segundo error alegado; o sea el que se refiere a la no admisión de ciertas cartas que fueron presentadas como prueba.   Como es bien sabido, hemos estado siempre a favor de gran liberalidad por parte de nuestras cortes inferiores, en la admisión de pruebas, puesto que todos los casos civiles se celebran ante la corte solamente, sin intervención de jurado, y la corte puede generalmente al considerar el caso en definitiva, dar a las diferentes partes de la prueba la importancia que les corresponde, y rechazar aún entonces las materias que no sean del caso, o que no merezcan crédito.   Pero desde luego esa práctica no debe seguirse hasta el punto de exigir a la corte que admita prueba que sea enteramente fuera de propósito, y que no pueda considerarse bajo ningún aspecto del caso como teniendo relación con la cuestión de derecho planteada.   La prueba excluída consistía en ciertas cartas que se supone fueron escritas por el Sr. Grief, Vice-Presidente y Administrador General de la compañía demandada, o su empleado de confianza y taquígrafo.   La mayor parte de las mismas parecen tener relación

al aviso dado a la demandada, del sitio, tiempo y causa del accidente, y según hemos dicho anteriormente, en vista del hecho de que este pleito fué entablado dentro de los seis meses concedidos por la ley, dicho aviso no era necesario, y la prueba con respecto al mismo, no tenía importancia alguna. Por lo tanto, la exclusión de la misma, si es que era errónea, era un error que no perjudicaba al apelante, por lo que éste no puede alegarlo con éxito. (Véanse los casos mencionados anteriormente.)

Pero parece que una de las cartas contenía una oferta de arreglo, cuya oferta el apelante insiste en considerar como una admisión de responsabilidad. Las cortes no permiten que se haga tal uso de cartas de esta clase. Hasta ahora hemos resuelto que es contrario a una justa práctica, el permitir que los esfuerzos hechos por una parte para evitar pleitos, se vuelvan de este modo contra dicha parte; y nos adherimos a esa decisión. (Véase el caso de *Rufino Colomé* v. *Guánica Centrale*, resuelto en 7 de junio de 1910.)

Pero, además de estas consideraciones, no aparece en ninguna parte de los autos, cuál era el contenido de las cartas que no fueron admitidas. A menos que las veamos, no podemos llegar a una conclusión lógica sobre su exclusión. Para que la cuestión pueda presentarse en debida forma ante este tribunal, es preciso consignar todo el contenido de las cartas, o por lo menos en sustancia, las partes esenciales de las mismas en un pliego de excepciones debidamente preparado y firmado. No habiéndose hecho esto no podemos decir que el tribunal sentenciador cometió error al excluir las mismas; sino que tenemos que presumir que la resolución tomada sobre ese extremo, fué correcta.

Los errores tercero y cuarto que se dice han sido cometidos por la corte inferior, pueden ser considerados conjuntamente. Esto es, ¿fué dictada la sentencia apelada de acuerdo con la ley y las pruebas? Pues debemos considerar que la ley que rige este caso según ha sido aplicada a la prueba que se encuentra en la relación de hechos; la ley y los hechos es-

tán intrincadamente entrelazados y la determinación del resultado depende de una y otros, La demanda del actor, después de retirada la excepción previa, es considerada como suficiente, y debemos averiguar si hay bastante prueba en los autos, para justificar una sentencia a favor del mismo. Si ha tenido éxito en sus alegaciones ¿la ha tenido en sus pruebas? ¿Debe, pues, el demandante ser indemnizado, a menos que la demandada haya alegado y probado alguna defensa afirmativa que sea suficiente para relevarla de toda responsabilidad? Podemos por ahora hacer caso omiso de estas preguntas, y considerarlas más tarde, si fuere necesario.

Veamos, primero, cuáles son los puntos en que se apoya la defensa. Las defensas especiales presentadas por la compañía demandada, consisten en tres alegaciones. En substancia son como siguen:

1ª. Que la propia negligencia del demandante fué la causa o contribuyó a que dicho demandante sufriera las lesiones que ahora alega en su demanda, y que tales lesiones no se ocasionaron por la negligencia de la demandada.

2ª. Que las lesiones sufridas por el demandante, fueron el resultado de los riesgos que constaban al demandante, y que fueron asumidos por él, como inherentes a su empleo.

3ª. Que el demandante era un empleado de la demandada y que, si sostuvo las lesiones alegadas, éstas no fueron causadas por defectos en la vía, obras o maquinarias pertenecientes a, o en uso, en el negocio de la demandada; los cuales, resultaron, o no habían sido descubiertos o remediados por la demandada; o a causa de negligencia de la misma o de ninguna persona empleada por ella y a cuyo cargo estaba el ver que las vías, obras y maquinarias estuvieran en buena condición en el servicio de la demandada, cuyos deberes eran la inspección, cuya única ocupación era ejercer la inspección o superintendencia, ni por negligencia de ninguna persona encargada de ninguna propiedad de la demandada o que físicamente la tuviera a su cargo, resultando solamente por razón de la

negligencia y falta de cuidado por parte del propio deman-
dante.

No hay alegación alguna en la contestación, que exprese el
hecho de que la lesión fuera el resultado de la negligencia de
un compañero del demandante; ni hubo prueba suficiente pa-
ra sostener tal alegación en el caso de que se hubiera hecho.
Por lo tanto, puede excluirse esta fase del pleito de la con-
sideración de este tribunal, aunque haya sido presentada in-
cidentalmente de un modo suave en el alegato de la apelada.

Lo que antecede es en substancia lo que constituye las ale-
gaciones; veamos cuáles son los hechos probados en el caso.
No existe ningún conflicto esencial entre las pruebas según
aparecen en los autos. Toda la prueba está consignada en los
autos, y puede compendiarse substancialmente como sigue:

El demandante, en la época en que sufrió las lesiones,
era un muchacho de 19 años de edad y trabajaba como ayu-
dante mecánico de la compañía demandada, la Guánica Cen-
trale. La demandada es una corporación organizada bajo
las leyes del Estado de New Jersey, y está autorizada
para hacer negocios en Puerto Rico. El día 19 de octu-
bre de 1908, fecha en que ocurrió el accidente, la Guánica
Centrale era dueña de la casa en que trabajaba el deman-
dante, de cuyo techo cayó al piso de abajo. Tal casa formaba
parte de los establecimientos que la central usaba en sus ne-
gocios. Era el deber del demandante, como tal empleado,
ayudar al mecánico a hacer las reparaciones y cambios en los
edificios de la compañía, incluyendo aquél en donde ocurrió
el accidente. En la referida fecha 9 de octubre de 1908, se
le ordenó al demandante, que barrenara unos hierros coloca-
dos en el techo de la mencionada casa, probablemente para
claraboyas; y mientras hacía eso, procedió a cumplir con las
órdenes que le habían dado, pasando en cuatro pies por di-
cha parte del techo, y al pararse sobre una de las planchas
de zinc que forman el techo, dicha plancha que estaba floja o
no asegurada en manera alguna, se salió de su sitio y cayó
junto con el demandante en un piso de madera como de trein-

ta pies más bajo, sufriendo por virtud de dicha caída, la fractura del antebrazo izquierdo, lo que le ha privado de trabajar hasta la fecha del juicio; que la causa del accidente fué la mala condición en que estaba aquella parte del techo, en que se ordenó al demandante que fuera a trabajar; que la referida plancha de zinc no estaba sostenida con remaches o clavos, sino que estaba imperfectamente sostenida, por un lado solamente, con una soldadura; y en tal condición la había dejado el carpintero que el día anterior había quitado otras planchas de zinc que estaban cerca de donde se encontraba la que causó la caída del demandante; que el día anterior los carpinteros habían trabajado a la vista de todo el mundo y que podía verse el efecto de su trabajo; que los carpinteros en su trabajo nada tenían que ver con el demandante ni con el mecánico a las órdenes de quien él trabajaba; que el demandante y su jefe estuvieron en el mismo sitio el día anterior; que varios carpinteros así como el demandante y quizás su jefe, habían pasado por la plancha de zinc, y que el demandante trató de ver si dicha plancha estaba asegurada; que a pesar de que el demandante era un muchacho, ningún agente o empleado de la compañía le advirtió que hubiera algún peligro en el ejercicio de su empleo; que el demandante tenía la misma oportunidad para saber el estado del techo que cualquiera persona razonable perteneciente a la corporación o empleada por la misma; que puede ser que los carpinteros hayan estado o nó regularmente en el empleo de la Guánica Centrale; pero asumiendo que eran empleados regulares aun así no hay nada en los autos que expresamente les imponga el deber de avisar al patrono o a los demás empleados. La prueba demuestra además, que a consecuencia de la fractura del brazo, el demandante necesariamente sufrió grandes dolores físicos, y que en la época en que sufrió las referidas lesiones, tenía capacidad para ganar setenta y cinco centavos diarios. No se había fijado ningún cartel, para hacer saber el estado defectuoso del techo, hasta que sucedió la caída del demandante. Este había sido empleado de la demandada durante diez me-

ses, por lo menos.   En vista de las pruebas, no hay motivo para creer que a excepción de su jefe inmediato, a quien no se imputa negligencia alguna, y de los carpinteros, nadie sabía más con respecto al estado del techo, que el mismo demandante; que cuando el demandante cayó, quedó sin conocimiento y no volvió en sí hasta después que se encontró en el hospital, donde permaneció por nueve días; que el demandante estuvo sin empleo desde el día del accidente hasta el del juicio, viviendo con su padre en San Germán.   Aparece además, que el demandante con anterioridad al suceso había estado empleado con la demandada durante diez u once meses; que inmediatamente después del accidente, el Sr. Miller, que era uno de los oficiales de la compañía, llegó y examinó la plancha de zinc, con el fin de ver como estaba asegurada y encontró que solamente por un lado estaba sostenida con soldadura, y que no había sido clavada ni remachada; que el mecánico a quien ayudaba el demandante, nada sabía de los defectos causados por la plancha de zinc suelta, lo que era necesario, a lo menos conveniente para el demandante al subir al techo, pasar por esta plancha de zinc, lo que no era necesario hacer al bajar. No hay discusión alguna con respecto a la gravedad de las lesiones sufridas por el demandante.   No existe ninguna contradicción esencial o irreconciliable en las declaraciones prestadas por los testigos en el presente caso; y los hechos, según han sido relatados por ellos, son substancialmente los mismos que acabamos de consignar aquí.

No es necesario resolver en el presente caso, hasta qué punto la doctrina de la ley común referente a la anulación de las responsabilidades impuestas a los patronos en casos de negligencia por parte de cooperarios o coempleados, resultada si es que lo está, afectada por la ley sobre responsabilidad de patronos.   Los hechos en este caso, tal como han sido consignados en los autos, no demuestran negligencia alguna por parte de los empleados, compañeros del demandante, a la cual pueda atribuirse el accidente que fué la causa de las lesiones,

objeto de la demanda.   De modo que esa parte del argumento presentado puede eliminarse de la discusión.

Por consiguiente, al revisar las alegaciones y las pruebas, no aparece claramente, a primera vista, que la sentencia dictada por el tribunal sentenciador no era justificada.   Examinemos, pues, más detenidamente este asunto en la forma indicada, para resolver esta cuestión fundamental.   Debemos luego averiguar ante todo, cuál es la ley aplicable a las alegaciones hechas por las respectivas partes y los hechos probados en el juicio.   Las cuestiones de derecho que surgen en la consideración del presente caso, se estimaron suficientemente importantes para celebrar las nuevas vistas de este caso, que tuvieron lugar separadamente en 4 de octubre y 22 de noviembre de 1910, y en 3 de abril de 1911.   En la última vista, ciertas cuestiones fueron sometidas por el tribunal, para su discusión, estimándose que el caso dependía de dichas cuestiones, que consignamos a continuación en el orden en que fueron sometidas, a saber:

"Atendida la importancia de las cuestiones legales envueltas en la resolución de este caso, es ordenado que el mismo sea señalado para nueva argumentación, escrita y oral, sobre los siguientes puntos:

"1º. ¿Son aplicables a los hechos de este caso, los estatutos sobre responsabilidad de patronos, aprobados por el Congreso y la Legislatura Insular, y en caso afirmativo, en qué sentido son aplicables?

"2º. ¿Aparece de los hechos de este caso, que el empleado asumió los peligros propios de su empleo?

"3º. ¿Qué obligaciones tenía el patrono en este caso, con relación a proporcionar a su empleado, un sitio seguro en que trabajar?

"4º. ¿Qué otras cuestiones pertinentes hay envueltas en la resolución de este caso?

"Para la celebración de la nueva vista de este caso ante el tribunal en pleno, se señala el día tres de abril próximo, a las dos de la tarde."

Por consiguiente, ¿éstas son las cuestiones que debemos discutir y determinar en la resolución de este caso, e incidentalmente las otras cuestiones que propiamente surjan de los hechos del caso?

Desde luego que en la consideración y decisión de cual-

quier pleito, la primer cuestión que surge en la mente de cualquier juez o abogado es naturalmente la de la ley aplicable al caso que se ventila. Ocurre a menudo que la acción está comprendida dentro de una clase que se rige por algún estatuto bien conocido o puede estar clasificada en una serie de casos comprendidos en número de famosas decisiones judiciales aminorándose de este modo la labor de la corte. La mente judicial ligeramente retrocede a esas clasificaciones tan pronto se le somete a su consideración un determinado caso. ¿Qué sucede con el presente caso? Para resolver en qué clase de casos está debidamente comprendido el presente, debemos examinar las cuestiones envueltas. Esta es una acción establecida por un empleado contra su patrono con motivo de daños y perjuicios sufridos en su persona. Examinando los estatutos encontramos que existen tres estatutos que regulan los derechos y obligaciones de los patronos y sus empleados. El primero fué aprobado por la Legislatura Insular en el año 1902, el segundo por el Congreso Americano en 1906, y el tercero también por el Congreso en 1908. Debemos primeramente determinar cuál de estas leyes es la que regula el caso que pende ante nos. Si todos son aplicables a la materia en cuestión, ¿cuál de ellos debe predominar?

Consideremos, pues, primero los Estatutos Federales. Se ha sugerido que las Leyes del Congreso aprobadas en 11 de junio de 1906 y en 22 de abril de 1908, conocidas con el nombre de Leyes sobre Responsabilidad de Patronos, son de aplicación al presente caso, y que por tanto el mismo debe resolverse de conformidad con los términos de las mismas. La cuestión referente a la fuerza y aplicación de estas Leyes Federales fué promovida en este caso por los abogados de ambas partes en sus respectivas argumentaciones y alegatos. Todos admiten de modo franco que los Estatutos aprobados por el Congreso están en vigor en esta Isla. Y desde luego, cuando ellos o alguno de los mismos resulta tener aplicación al caso pendiente de resolución, éste excluye al estatuto insular sobre la misma materia, si hay alguna incompatibilidad entre

ellos. La cuestión fué. considerada constantemente desde el día en que esta transcripción fué presentada aquí en 27 de abril de 1910, hasta la primera argumentación en 4 de octubre de 1910, y después hasta el 22 de noviembre de 1910, en que se celebró una nueva vista, y finalmente en 31 de enero último se consideró que la cuestión era de tal importancia que se ordenó una tercera vista y se pidió especialmente a los abogados de las partes que discutieran la cuestión de "qué aplicación, si es que alguna tienen las leyes sobre responsabilidad de patronos aprobadas por el Congreso y la Legislatura Insular, a los hechos que constan en los autos." Se discutió en 3 de abril último y las partes en el pleito parecían estar conformes en que estas leyes del Congreso estaban en completo vigor en esta Isla.

No surgieron dudas expresamente sobre la cuestión en el presente caso hasta el 21 de junio último, que la corte votó confirmar la sentencia dictada por la corte inferior en este caso, negándose a adoptar la opinión emitida por el infrascrito que hasta entonces era el ponente; insistiendo así en el punto de vista adoptado en el caso de Márquez. Según mi opinión, era un deber claro de este tribunal resolver esta cuestión en aquel caso de uno u otro modo, especialmente cuando de nuestra decisión con respecto a ese particular dependía el derecho del apelante para establecer recurso de apelación contra nuestra sentencia, para ante la Corte Suprema de los Estados Unidos. (Art. 35 de la Ley Orgánica.) Además, es y ha sido siempre para el mejor interés de la Isla que la Ley Americana aquí en vigor debe ser clara y precisa y bien conocida para todo el pueblo y no debe dejarse como cuestión dudosa, si un Estatuto Federal está o nó en vigor entre nuestros habitantes. Las cortes de la Isla, y mucho menos la Corte Suprema, nunca deben ayudar con su alto poder a las personas que tratan de promover dudas con respecto a las leyes bajo las cuales vive nuestro pueblo y por las que se deciden sus derechos y obligaciones. Ni la Corte Suprema de los Estados Unidos, ni los abogados que allí postulan, ni el bar de ..

Puerto Rico ni siquiera, han tenido duda alguna sobre este particular. Entonces ¿por qué hemos de sugerir en la mente del público una duda y después dejar de resolverla? ¿Es este el deber de los jueces que deben distinguirse por el ejercicio de su sabiduría y patriotismo? Creo que nó.

La cuestión referente a la vigencia y aplicación de estas leyes surge de modo claro y perfecto en el presente caso y debe resolverse ahora. En lo que a mí respecta, no quiero eludir la responsabilidad, o evitar la obligación de declarar lo que se cree es la ley que rige a nuestro pueblo en sus derechos y obligaciones, siempre que ese deber recaiga en el cargo judicial que es mi obligación desempeñar de la mejor manera posible, según mi humilde capacidad. Si nuestra decisión sobre este particular o cualquiera otra cuestión semejante es errónea, la Ley Orgánica ha dispuesto lo necesario con el fin de que un tribunal superior y ampliamente capacitado nos indique el verdadero camino, contra cuya resolución no hay apelación.

Pero se alega por mis colegas que ésta es una cuestión discutible y no es necesaria en la resolución del presente caso, resolver si las Leyes Federales en cuanto a responsabilidad de patronos están o nó en vigor en Puerto Rico. En otras palabras, que debemos dejar esta cuestión para ser discutida en el futuro a expensas de algún otro litigante. Pero no puedo estar conforme con tal proposición. No puedo consentir que así se alienten litigios. "*Interest Reipublicae ut sit finis litium.*"

¿Es nuestro deber como jueces confundir a los abogados haciendo más dudosa la ley de lo que deba serlo, la que se exige sea obedecida por nuestro pueblo, o nos incumbe explicar y esclarecer las partes obscuras de la legislación, a fin de que el ciudadano que acata la ley pueda seguidamente conocer su deber y estar dispuesto a cumplirlo? "*Ignorantia legis neminem excusat.*" La ignorancia de la ley no excusa a ningún hombre. ¿Deben entonces los jueces de nuestro más alto tribunal alegar tal excusa por no resolver una cuestión que les ha

sido presentada perfectamente en un caso en que claramente tienen jurisdicción? Debo indefectiblemente contestar. No. Tampoco podemos eludir nuestro deber por ignorar estos Estatutos Federales, en nuestra decisión, después de haber anunciado ya que son de gran importancia y merece ser discutida la aplicación de los mismos, y de haberse ordenado la celebración de otra vista con tal objeto. La cuestión fué claramente presentada en la vista ante este tribunal y tenemos que afrontarla, o eludirla; no podemos escapar de este claro dilema.

Jamás ha sido la práctica de las cortes superiores americanas eludir cuestiones de importancia como ésta, aun pudiendo hacerlo, atendidas las circunstancias especiales del caso. La práctica seguida por aquel gran padre y fundador de la Ley Constitucional en el célebre caso de *Marbury* v. *Madison,* 5 U. S., 152, es una digna de ser observada. Por tanto, la cuestión ciertamente debe ser examinada. Puede presumirse que en Puerto Rico, como en otros territorios de los Estados Unidos, ambas de estas leyes están en vigor en aquellos casos que caen dentro de sus prescripciones y que están comprendidas en las limitaciones impuestas a las mismas por la Corte Suprema de los Estados Unidos. (*National Bank* v. *County of Yankton,* 101 U. S., 133; *Roman Catholic Church* v. *Ponce,* 210 U. S., 296; *Kopel* v. *Brigham,* 211 U. S., 468, 475, 476.)

Sin embargo, se han expresado dudas con respecto a la vigencia de estos Estatutos Federales. Suponen los dudosos que probablemente estos estatutos pueden ser localmente inaplicables en Puerto Rico. El Congreso a juzgar por el texto de los propios estatutos, al parecer no tuvo duda alguna sobre la cuestión. Ni hay allí nada, en todo lo que he leído, en las Decisiones de la Corte Suprema de los Estados Unidos, que induzca a nadie a creer que prevaleció la idea en aquel más alto de todos los tribunales, de que Puerto Rico y sus habitantes quedaron excluídos de la protección que aquellos estatutos les proporcionaban. En mi opinión separada en el

caso de *Márquez* v. *N. Y. & P. R. S. S. Co.* presentada en esta corte en 6 de mayo del corriente año, traté la cuestión con alguna extensión. Se hace referencia a dicha opinión.

De conformidad con las decisiones dictadas en dos célebres casos por el Tribunal Supremo de los Estados Unidos, se resolvió que la Ley sobre Responsabilidad de Patrónos de 1906, era claramente aplicable a los Territorios, y en lo que a los mismos hacía referencia constitucional. (*Employers' Liability Cases*, 207 U. S., 463-541; *El Paso & N. Ry. Co.* v. *Gutiérrez* 215 U. S., 87.)

En igual sentido se enuncia la brillante opinión del Juez Presidente Sr. Shepard, de la Corte de Apelaciones del Distrito de Columbia, en el caso de *Hyde* v. *Southern Ry. Co.*, 31 App. D. C., 466. Esta es una de las primeras opiniones sobre la materia y es notable por su análisis sutil y lógica convincente.

¿Por qué no está entonces en vigor este estatuto en Puerto Rico? Se ha sugerido que es o puede ser, "localmente inaplicable." Según el artículo 14 de la Ley Orgánica, todas las leyes del Congreso, que no sean "localmente inaplicables" se consideran que "tienen la misma fuerza y vigor en Puerto Rico que en los Estados Unidos." ¿Hay algo en la esencia de esta ley del Congreso que la haga estar incluída en esta clase y se la declare "localmente inaplicable?" En vano se han investigado todas sus secciones con el fin de ver si hay algo en el texto de la misma ley que la convierta en localmente inaplicable, y de un examen de todas las decisiones de esta corte y de todas las Cortes Federales, incluyendo la más alta, resulta también inútil ese esfuerzo que se ha hecho con el fin de ver si tal parecer ha sido adoptado o sostenido por algún juez de alguna corte al emitir su opinión.

Hacia el año 1879, la Corte Suprema de los Estados Unidos determinó de una vez para siempre el poder del Congreso para legislar con respecto a los territorios. Ciertamente no había sido puesto en duda hasta entonces. La Corte Su-

prema, por medio de su Juez Presidente Hon. Morrison R. Wait, dijo:

"Todo territorio comprendido en la jurisdicción de los Estados Unidos y no incluído en ningún Estado debe necesariamente regirse por y de acuerdo con la autoridad del Congreso. Los Territorios no son sino subdivisiones políticas de los dominios fronterizos de los Estados Unidos. Su relación para con el gobierno general es casi igual a la en que se encuentran los condados y sus respectivos Estados, pudiendo legislar para ellos el Congreso como lo hace un Estado para sus organizaciones municipales. La ley orgánica de un Territorio substituye a su constitución como ley fundamental del gobierno local. Es obligatoria para, y obliga a las autoridades del Territorio; pero el Congreso es supremo, y para los fines de este ramo de su autoridad gubernamental tiene todos los poderes del pueblo de los Estados Unidos, excepto aquellos que expresa o tácitamente están reservados en las disposiciones prohibitivas de la Constitución. En la Ley Orgánica de Dakota no existía una reserva expresa de poder en el Congreso para enmendar las leyes de la legislatura, ni era necesario que la hubiera. Tal facultad depende de la soberanía, y sigue hasta que sea quitada El Congreso no solamente puede anular las leyes de las legislaturas territoriales, sino que puede por sí legislar directamente para el gobierno local. Puede hacer válida una ley de la legislatura territorial que haya sido declarada nula, y anular una válida. En otras palabras, tiene amplios poderes y completa autoridad legislativa sobre el pueblo de los Territorios y todos los departamentos del gobierno territorial. Puede hacer para los territorios, lo que el pueblo bajo la Constitución puede hacer para los Estados."

*National Bank* v. *County of Yankton*, 101 U. S. Rep., 133.

También aparece que el Sr. Secretario Knox, mientras desempeñaba el cargo de Attorney General de los Estados Unidos, participó de igual opinión que la emitida por la Corte Suprema de los Estados Unidos acerca de esta cuestión. El dice:

"Puerto Rico ha sido completamente organizado de acuerdo con una ley del Congreso que dispone todo lo concerniente a su gobierno, y organizado principalmente según el plan adoptado para los Territorios contiguos a los Estados de la Unión. La presunción de todo el tenor de esta ley orgánica es que una interpretación liberal de la dis-

posición que hace extensiva las leyes de los Estados Unidos, estaría de acuerdo con el propósito del Congreso.''

Opinion of Atty. Gral. P. C. Knox, Vol. XXIII.

Opinions of Attorneys General, p. 635.

Evidentemente que nuestros legisladores creyeron que las leyes como la Ley Federal sobre Responsabilidad de Patronos era de aplicación en Puerto Rico, como aparece claramente del hecho que nuestra Legislatura Insular pasó una ley semejante cuatro años antes que la primera ley del Congreso.

Además, en el caso de *The Peck Steamship Line* v. *N. Y. & P. R. S. S. Co., y Am. R. R. Co.,* 2 P. R. Fed. Rep., 109, se declaró por la Corte Federal de la Isla, que ''Puerto Rico es substancialmente un Territorio de los Estados Unidos.'' (Véase el caso mencionado en que se cita el Tratado de París; la Ley Foraker; 23 Ops. Attorney General 634; *Southern Pac. R. Co.* v. *United States,* 38 Fed. Rep., 55, y muchas otras autoridades.)

Pero puede o pudiera tal vez sugerirse que Puerto Rico no es un ''Territorio'' de los Estados Unidos, dentro del significado de la Ley sobre Responsabilidad de Patronos. ¿Por qué nó? En el caso de la Iglesia Católica Romana, al discutirse la aplicación de la ley de 30 de julio de 1886, que disponía ciertas prohibiciones contra ''las legislaturas de los Territorios,'' se resolvió que la ley era inaplicable para esta Isla, no porque Puerto Rico no estuviera incluído en la palabra ''Territorios,'' sino porque aquella ley fué reemplazada por la disposición especial de nuestra Ley Orgánica. El Juez Presidente Sr. Fuller, hablando por la Corte Suprema, dijo con respecto a esta cuestión:

''Pero tales prescripciones de carácter general no tienen aplicación en los casos en que por el contrario se concede permiso específico por la ley orgánica aplicable a los *determinados territorios.*''

Posteriormente en la misma opinión el Juez Presidente continúa:

"La ley de Puerto Rico que consideramos meramente repite la acción del Congreso en el pasado al organizar otros territorios."
*Ponce* v. *Roman Catholic Church,* 210 U. S., 296, 307, 308.

Esta opinión se emitió en el año 1907, y claramente clasifica a Puerto Rico como un territorio de los Estados Unidos, al que es de aplicación la legislación general del Congreso.

Y al año siguiente, el mismo eminente jurisconsulto, hablando a nombre de ese alto tribunal, sostiene igual posición jurídica en un bien conocido caso en que la cuestión versaba sobre la aplicación de un estatuto, que había sido aprobado mucho antes de la guerra Hispano-Americana, y en donde se disponía que los prófugos de la justicia podrían ser solicitados de la "autoridad ejecutiva de cualquier Estado o Territorio a donde hubieran huído, etc." El Juez Presidente, al terminar su opinión en aquel caso, dijo:

"Puede justamente asegurarse que Puerto Rico es un Territorio completamente organizado, aunque no incorporado en los Estados Unidos."
*State ex rel. Kopel* v. *Bingham,* 211 U. S., 468, 476.

Y en una parte anterior de dicha opinión la corte adopta como definición de la palabra "Territorio," según dicha palabra se emplea en la legislación del Congreso, la siguiente:

"Una porción del país no comprendido en los límites de ningún Estado ni admitido aún como Estado en la Unión, pero organizado bajo las leyes del Congreso, con una legislatura por separado, bajo un gobernador territorial y otros funcionarios nombrados por el Presidente y Senado de los Estados Unidos."
*Kopel* v. *Bingham,* 211 U. S., 475.

Esta definición se aplica a esta Isla, y si fué así correctamente aplicada a Puerto Rico, entonces éste es uno de los Territorios a los que trató de afectar la ley sobre Responsabilidad de Patronos de 1896. Si la primera ley es aplicable a Puerto Rico, entonces también lo es la segunda, puesto que ésta es meramente enmendatoria de la primera, y se limita a *portadores comunes por ferrocarril,* en vez de hacerla exten-

siva a todas las demás como lo hacía la primera ley.  Si las opiniones del más alto tribunal en la tierra han de considerarse como que tienen alguna fuerza obligatoria aquí, no puede haber duda alguna sobre esta cuestión por más tiempo, aquí o en ninguna otra parte.

Con respecto a las leyes aprobadas por el Congreso en 1906 y 1908, regulando la responsabilidad de los patronos para con sus empleados, y la aplicación de las mismas al presente caso, es conveniente expresar que la última de estas dos leyes se refieren por su título solamente a la responsabilidad de portadores comunes *por ferrocarril* y claramente no tiene relación con un caso como el que ahora se considera.  La primera ley se refiere asimismo a los portadores comunes en *general,* en los territorios y en el Distrito de Columbia, y a los que se encuentran ocupados en comercio entre Estados, etc.  En lo que se refiere a cargadores comunes ocupados en comercio entre Estados, esta ley ha sido declarada inconstitucional y nula.  Pero se ha declarado que es válida y está en toda su fuerza y vigor en el Distrito de Columbia y en los Territorios.  Toda la cuestión se ha discutido ampliamente y finalmente resuelta en los casos anotados en los tomos 207 U. S. Rep., págs. 463 y siguientes, y en el tomo 115 U. S. Rep., págs. 88 y siguientes.  La opinion del Juez Presidente Sr. Shepard, anotada en 31 App. D. C., págs. 466, se hace referencia a ella en el último caso con aprobación y ha sido virtualmente seguida en la decisión.

En 25 de febrero de 1907, la Corte Federal de Puerto Rico declaró que la Ley sobre Responsabilidad de Patronos aprobada por el Congreso en el año anterior, no tenía en sí nada que fuera localmente inaplicable, siendo constitucional en cuanto concierne a Puerto Rico, y estaba allí vigente. (*Cortejo* v. *Am. R. R. Co.,* 2 P. R. Fed. Rep., 395; en donde se cita el caso de *Peck S. S. Line* v. *N. Y. & P. R. S. S. Co.,* 2 P. R. Fed. Rep., 109; *Días* v. *Fajardo Development Co.,* 2 P. R. Fed. Rep., 152, y otros casos.)

Pero aparece claramente de este caso que el demandado

no hace negocios de transportación por *ferrocarril;* por lo menos no hay alegación alguna ni prueba de tal hecho en los autos. Por esa razón no puede entonces considerarse a la segunda ley como aplicable al caso particular que se discute. De igual modo hemos buscado en vano alguna alegación o prueba referente a que la demandada sea en realidad una conductora pública, y dedicada ya al flete de ferrocarriles u otra clase de transportaciones. Solamente aparece que es una corporación extranjera que posee edificios en Puerto Rico, en uno de los que ocurrió el accidente. Por tanto, de acuerdo con los hechos alegados y probados según constan en los autos, aunque esos Estatutos Federales están vigentes en esta Isla, no podemos aplicar ninguno de ellos al presente caso.

Sin embargo, la ley de la Legislatura Insular que define las obligaciones de los patronos para con sus empleados aprobada en 1 de marzo de 1902 (Est. Rev. de P. R., arts. 322, 333, págs. 162-167), es claramente aplicable a los hechos de este caso, y el demandante así como el demandado están de igual modo obligados por sus términos; y si en este caso se obtiene alguna indemnización, debe ser de acuerdo con las reglas expuestas por el estatuto.

Veamos si la demandada ha sido culpable de alguna negligencia, la que según el estatuto de Puerto Rico que trata de los principios generales de ley aplicables a este caso, la harían responsable por daños y perjuicios y contestar la demanda presentada por el demandante.

Bajo esta ley hay tres causas por las cuales puede obtenerse indemnización: 1ª. Por causa de cualquier defecto en el estado de vías de comunicación, obras o máquinas; 2ª. Por causa de la negligencia del superintendente; y 3ª. Negligencia de empleados del ferrocarril.

La tercera causa es claramente inaplicable al presente caso. La segunda se refiere al caso de negligencia de cualquier superintendente o persona, "cuyo solo deber, o principal deber, sea el de superintendencia." No existe prueba

alguna de que tal persona estuviera al frente o encargada de este trabajo. Por tanto, cualquier indemnización que busque el demandante de acuerdo con este estatuto, debe fundarse en la primera de las causas mencionadas, o sea, un defecto de las vías, obras o maquinarias.

Ni la casa en donde trabajaba el demandante en la época del accidente, ni el techo de la misma, pueden estar clasificados como vías o maquinaria. Entonces debemos ver si puede estar comprendida en la denominación de "obras," según se usa en el estatuto. Alega en su alegato el apelado, que el techo de un edificio no puede estar comprendido en la denominación de "vías, obras o máquinas," como se usa en la Ley sobre Responsabilidad de Patronos, y con referencia al sitio donde trabajan los empleados. Una casa, con o sin techo, si la usa una fábrica en sus negocios, como lo era la que se menciona en este caso, está perfectamente comprendida en la denominación general de "obras"; y el declarar otra cosa sería dar una interpretación forzada al estatuto. Jamás se ha dado tal interpretación a esta ley o a otra semejante, según hemos podido investigar, por ninguna corte americana; y nosotros ciertamente no debemos consentir marcar el camino en tal sentido al considerar un estatuto que ha sido aprobado para la protección de los empleados a quienes se exige que trabajen para los dueños de grandes factorías y que vayan donde quiera que los manden en el cumplimiento de sus obligaciones diarias. Pero las cortes americanas han definido la palabra "obras" al usarse en estatutos semejantes a nuestra ley sobre Responsabilidad de Patronos, y conviene hacer algunas citas tomadas de opiniones emitidas sobre la materia.

La Corte Suprema de Missouri, siguiendo al Diccionario Century, define la palabra "obras" diciendo que es "un establecimiento para trabajos de manufacturas o industriales de cualquier clase; generalmente en el plural comprende todos los *edificios,* maquinarias, etc., que se usan en las operaciones que se efectúan, como "trabajos de hierro." (*South St.*

*Joseph Land Co.* v. *Pitt,* 114 Mo., 135; 21 S. W. Rep., 450.)
Esta decisión fué adoptada un año después por la misma
corte en el caso de *Hanna* v. *S. St. Joseph Land Co.,* 126 Mo.,
1; 28 S. W. Rep., 654. En igual sentido encontramos el caso
de *Conroy* v. *Clinton,* 158 Mass., 318. (Véase también 8
Century Dictionary, pág. 6976, al final de la primera co-
lumna.) Entonces estamos justificados al considerar el *edi-
ficio* en que ocurrió el daño al demandante, como parte de las
*obras* de la demandada, según se hace referencia en nuestros
estatutos.

Por tanto, teniendo presente que la casa en que se en-
contraba trabajando el demandante, debe considerarse de
acuerdo con la ley como parte de las "obras" de la deman-
dada, ¿qué defectos, si hay algunos, se encuentran en ella?
No aparece de la prueba que tales defectos hayan existido y
que hagan responsable a la demandada. Ni se ha mostrado
que dicho defecto, si existió, "salió de allí, o que no fué des-
cubierto o corregido debido a la negligencia del patrono o
de cualquiera persona empleada con el mismo y a quien se
hubiera confiado el deber de observar que las vías, obras y
maquinarias estuvieran en buena condición." Por tanto, no
se ha probado ningún caso según el Estatuto Insular, que
diera derecho al demandante a una sentencia a su favor.

Consideremos la doctrina general enunciada por las cortes,
con respecto a las obligaciones impuestas a los patronos de
proporcionar a sus empleados un sitio seguro donde realizar
su trabajo. Se ha resuelto por todas las cortes americanas,
que es deber del patrono usar razonable diligencia al propor-
cionar un sitio seguro en donde trabajar al empleado, y ade-
cuado para el objeto del trabajo, y al suministrar dicho sitio
se exige al patrono que ejercite cuidado ordinario. Lo que
constituye cuidado ordinario o razonable debe resolverse a
la luz de los hechos especiales y circunstancias de cada caso
en particular. Además, se exige al patrono que observe igual
cuidado que el que se le exige primeramente al proporcionar
el sitio, aparatos o instrumentos, en la inspección y superin-

tendencia de los sitios y aparatos que con tal fin suministra, para descubrir de este modo los defectos que posteriormente pudieran ocurrir. Para anular el derecho del empleado a una reclamación no solamente debe ser conocido por éste el defecto en el aparato, o peligro en el sitio suministrado, sino que debe conocer y apreciar los riesgos y peligros que resulten o puedan resultar de tales peligros y defectos; aunque por ello no pueda estar en mejor condición que si desconociera dichos defectos, riesgos y peligros, debido a no ejercitar ordinario sentido común y prudencia, al examinar el lugar en que se le pone a trabajar, o los instrumentos o aparatos que se les entreguen para el trabajo. (*Alexander* v. *Central L. & M. Co.,* 104, Cal., 539; *McNamara* v. *McDonough,* 102 Cal., 575; *Davis* v. *Oceanic S. S. Co.,* 89 Cal., 281.)

El deber que tiene un patrono para con su empleado con respecto a este particular, ha sido bien establecido por la gran corriente de autoridades de todas las cortes americanas. En relación con este punto podemos perfectamente citar algo de una opinión emitida por el Juez Sr. Cassoday de la Corte Suprema de Wisconsin, en la que se dice:

"Se alega que el demandado no tenía obligación alguna para con el demandante de mantener en condiciones de seguridad el techo de la casa en que ocurrió el accidente. Pero es evidente que los deberes del demandante y otros empleados de la demandada les obligan a que de tiempo en tiempo suban al techo del sitio o cerca de él, y que el demandante estaba en el cumplimiento de sus obligaciones cuando de tal modo fué allí. La demandada estaba obligada a suministrar al demandante un sitio seguro en donde trabajar, o notificarle de cualquier defecto oculto o imprevisto. (*Hulehan* v. *Railroad Co.,* 68 Wis., 520; 32 N. W., 528; *Nadau* v. *Lumber Co.,* 76 Wis., 127; 43 N. W., 1135.) En este caso el peligro estaba oculto y solamente podía ser conocido de aquellos que conocían el efecto que podría producir el dejar que cenizas, sucio, etc., se acumulara en el techo por largo tiempo."

*Engstrom* v. *Ashland Iron and Steel Co.,* 35 N. W. Rep., 242.

Pero según antes hemos expresado, no hay discusión alguna de que nuestra ley sobre Responsabilidad de Patronos

al caso que ahora pende ante este tribunal, y exige que el patrono cumpla con ese deber.    Hace unos seis años que la cuestión fué sometida a nuestra consideración y en tal sentido declaramos y aplicamos la ley en un caso semejante al que ahora consideramos.    (*Morales* v. *Central Machete*, sentencia de 3 de junio de 1905, tomo 2, Decisiones de Puerto Rico, 607.)    Este deber del patrono está íntimamente relacionado con los riesgos que el empleado asume al entrar al servicio; y al tratar de estas cuestiones a veces son considerados por los tribunales conjuntamente los riesgos y deberes a que se ha hecho referencia.

Examinemos ahora la cuestión de qué riesgos asume el empleado en el curso de su empleo; e incidentalmente, a negligencia de qué parte, si alguna existe, se debió el daño causado al demandante.    Con respecto a los riesgos incidentales del empleo asumidos por el empleado al emprender cualquier clase de servicio, podemos decir que los principios de ley de aplicación a esta cuestión, han sido establecidos en la cortes americanas por gran multitud de decisiones.    La doctrina que rige a los casos de esta clase puede ser compendiada como sigue:

Aunque un empleado no asume ningún riesgo incidental del servicio cuya realización emprende, que sea extraordinario o no corriente, al aceptar el empleo asume todo riesgo o peligro corriente y ordinario que proceda del mismo, ya sea el servicio peligroso o nó; y asume además todos los riesgos que conoce o que pueda conocer ejercitando razonable cuidado, a menos que haya alguna estipulación en contrario.    Sin embargo, no asume ningún peligro o riesgo que resultare de la negligencia de su patrono, ni aquellos que sean ocultos o son descubiertos solamente cuando ocurre el perjuicio por el cual se presenta la demanda.    (Véase 26 Cyc., pp. 1177-1180, y caso allí citado.    También los siguientes:

*Besares* v. *Caguas Tram. Co.*, resuelto por este tribunal May 23, 1910.

*Montzer* v. *Armour*, 18 Fed. Rep., 375.

*Crawford* v. *Am. Steel & Wire Co.*, 123 Fed. Rep., 275.
*St. Louis Cordage Co.* v. *Miller*, 126 Fed. Rep., 495.
*Glemmond Lumber Co.* v. *Bay*, 126 Fed. Rep., 524.

La ley referente a la responsabilidad del demandado ha sido claramente expresada en un caso semejante por el Juez Presidente Sr. Shepard, de la Corte de Apelaciones del Distrito de Columbia. Hablando a nombre de ese tribunal dice el juez presidente:

"Examinada bajo los principios de la ley común, la evidencia era insuficiente para mostrar negligencia por parte del demandado que diera origen a una acción. Se construía un gran edificio. El trabajo principal del demandante era en uno de los extremos del mismo, remachando trabazones con el cuartón de afuera. El lugar de su trabajo era en un andamio en donde al parecer él estaba razonablemente seguro bajo las condiciones regulares de su trabajo especial. No resulta de la evidencia que él o sus inmediatos compañeros fueran requeridos o se esperaba que pasaran sobre la armadura de hierro para llegar al andamio dispuesto para ellos, o para procurar utensilios para el cumplimiento de su trabajo, o que el demandado emprendió el trabajo de colocar tablones a través de las vigas con el fin de facilitar a cualquiera de sus empleados pasar cerca de la armadura de hierro. Cómo sucedió que el tablón llegó a estar colocado sobre las vigas, o por quién, o con qué objeto, no se ha demostrado. Por todo lo que resulta, los tablones pudieron haber sido traídos y colocados por algunos de los trabajadores ocupados en las obras, por su propia conveniencia, y sin que nadie se lo indicara, o pueden haber sido tablones que sobraban, y que habían quedado sobre el andamio. La obligación de un patrono de proveer de sitios razonablemente seguros para al trabajo de sus empleados no le impone la obligación hacia ellos de conservar el edificio en el cual están trabajando en una condición segura en cada momento de su trabajo, ya que su seguridad depende del debido cumplimiento del trabajo. (*Armour* v. *Hahn*, 11 U. S., 313, 318; 28 L. ed., 440, 441; 4 Sup. Ct. Rep., 433.)

"Además no hubo prueba que mostrara que el tablón, si estaba a través de la viga, por orden del patrono, para que se pararan en él los operarios o anduvieran a su antojo, se encontraba en tan defectuosa condición que sea necesario imputar negligencia al demandado al no notarlo. (*Looney* v. *Metropolitan R. Co.*, 200 U. S., 480, 486; 50 L. ed., 564; 26 Sup. Ct. Rep., 303.) Se dijo en aquel caso: 'Para declarar que un patrono es responsable, el empleado debe probar que

los instrumentos o utensilios suministrados eran defectuosos. Del mero hecho del perjuicio no puede deducirse el defecto. Debe haber alguna prueba substancial de la negligencia. Debe mostrarse conocimiento del defecto o la omisión de algún deber con relación al mismo.' (*Scheneider* v. *Am. Bridge Co.*, 31 App. Cases, 426.)

Este caso es tan parecido al presente que bien podemos adoptar igual razonamiento y hasta el texto citado.

Este caso puede considerarse bajo otro aspecto según los hechos probados en el juicio, o sea, que es imposible imputar culpa a nadie en el accidente; pero que el accidente que tuvo por resultado la caída y consiguiente daño del demandante, fué un accidente contra el que hubiera sido muy difícil, si no imposible, poner remedio. Tales sucesos ocurren diariamente con resultados más o menos perjudiciales, y a veces desastrosos y hasta fatales. Pero mientras la naturaleza humana sea falible debemos considerarla como la hallamos y no tratar de aplicar a seres humanos que yerran, preceptos de responsabilidad que sólo son adecuados para facilitar reglas por las que deben regirse los seres superiores. En relación con esto, bien podemos recurrir a las frases de aquel distinguido jurista, el Juez Presidente Thomas M. Cooley, quien en un caso bien considerado, se expresó como sigue:

"El demandante funda su reclamación en la negligencia de los demandados al dejar descubierta la rueda. Se probó en el juicio que con un pequeño gasto se hubiera podido construir al lado de la rueda un aparato de protección que hubiera hecho imposible que el accidente ocurriera; que se alega que la falta de hacer tal construcción era un descuido tan culpable de la seguridad de aquellos que estaban empleados con los demandados, que los hacía responsables por todas las consecuencias. Si el accidente que ocurrió fué uno que en realidad era probable que ocurriera, la consecuencia probable de una persona que trabajaba al lado de la rueda, era que fuera cogida por ella, como lo fué el demandante, habría entonces fundamento para insistir en este argumento. Pero no puede decirse que el accidente sea uno que aun una persona prudente probablemente hubiera podido preveer. Un accidente análogo y con las mismas serias consecuencias podría ocurrir en casi todas partes, en cualquier taller de maquinaria, o en una hacienda, así como en una factoría, y después que hubiera

ocurrido, inmediatamente se hubiera visto que había podido evitarse. Pero el hecho de que pudiera evitarse no prueba que hubiera falta en no anticiparse y tomar las medidas de precaución necesarias para evitarlo. Si un peón de una finca se cae de una hacina de heno la caída no demuestra que el dueño de la finca fuera culpable por no poner una cerca a dicha hacina. Un hombre que dé un traspiés en una herrería puede ser cogido en su mano o cabeza por el martillo grueso de dicha herrería, pero de ahí no se deduce que haya ninguna negligencia en el cumplimiento de su deber por parte del herrero al dejar descubierto el martillo. Si existe alguna obligación por parte del propietario en estos casos, ésta es únicamente evitar los daños probables, pero no se extiende dicha obligación a exigir a dicho propietario que haga imposible que resulten tales accidentes. La prueba muestra un caso de simple accidente, sin que exista más negligencia en una parte que en la otra.''

*Sjogren* v. *Hall,* 53 Mich. Rep., 274.

Este caso en completamente idéntico al presente, y la opinión es tan clara y lógica y de tan elevada autoridad, que podemos fundar en él sólo, si fuere necesario, nuestra opinión; pero considerado en relación con las otras autoridades que han sido citadas, y de las que se han hecho citas, estamos obligados a confirmar la sentencia dictada por la corte inferior.

Pero aparte de todas estas consideraciones, se ha resuelto por la más alta autoridad judicial, que la obligación del patrono de suministrar a su empleado un sitio que sea razonablemente seguro para trabajar, no se extiende a un edificio en proceso de construcción, cambio o reparación. Es evidentemente imposible que el patrono pueda seguir la condición cambiada del edificio, a cada instante, y mantenerlo seguro para cada operario que tenga que trabajar en él, de hora en hora, según se hagan los cambios. En tal estado de cosas, tienen que modificarse las obligaciones impuestas a los patronos y amoldarlas a las circunstancias del caso. En el caso de *Armour* v. *Hahn,* 111 U. S., 318, la Corte Suprema de los Estados Unidos, se expresó como sigue:

"La obligación de un patrono de proveer de sitios razonablemente seguros para el trabajo de sus empleados no le impone la obligación hacia ellos de conservar el edificio en el cual están trabajando en una condición segura en cada momento de su trabajo, ya que su seguridad depende del debido cumplimiento del trabajo."

Este caso simplemente apoya la doctrina general de que debe considerarse que un empleado asume el riesgo creado por el trabajo en el cual está ocupado, así como por ejemplo, en el presente caso, cuando el mismo trabajo tiende a hacer insegura la construcción. El riesgo que hubo aparecía claramente a la vista ordinaria y observación casual. Siendo el demandante un mecánico que trabajaba con la demandada desde hacía diez meses, debe suponérsele que conocía el riesgo evidente que existía en relación con el hecho de subir por un techo que estaba medio caído, como el que se describe en los autos. Los casos son unánimes en el sentido de que en tal caso, a no ser que exista una patente negligencia por parte del demandado el demandante no puede ser indemnizado. En el presente caso no hay prueba ninguna de negligencia por parte de alguna persona.

Teniendo en cuenta las consideraciones que se han hecho de los puntos principales en este caso, se hace innecesario discutir con mayor amplitud las otras cuestiones que han sido presentadas en los informes orales, o sugeridas en los alegatos de los abogados. Creyendo, según la prueba, que las lesiones recibidas por Pérez resultaron de un mero accidente, el que probablemente no hubiera podido evitar la previsión de ninguna de las partes demandante o demandada, y que ninguna de ellas fué culpable de negligencia en el sitio en que los hechos ocurrieron, no podemos declarar culpable a la demandada por daños y perjuicios. Por tales razones nos vemos obligados a no alterar la sentencia dictada por la corte inferior.