BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO, demandante y recurrido, *v.* OFICINAS PROFESIONALES, INC., SUCESIÓN DE JUAN B. MOCZÓ, compuesta por JUAN MOCZÓ ALIAGA y PILAR ALIAGA VDA. DE MOCZÓ ET AL., demandados, y recurrente la segunda.

*Número:* R-82-583    *Resuelto:* 14 de junio de 1983

*Raúl Dávila Rivera*, de *Bauzá & Dávila*, abogado de los recurrentes; *Alfredo Castro Mesa*, abogado del recurrido.

## SENTENCIA

El axioma rector que informa la Ley de Evidencia como mecanismo para lograr hasta donde los límites imperfectos humanos permiten la verdad judicial está cimentado sobre la premisa cardinal de "garantía circunstancial de veracidad".

Principios relativos a las inferencias, deducciones, lo probable frente a lo menos probable, obliga en los casos civiles a que la decisión del juzgador se produzca de acuerdo con la preponderancia de las pruebas, "a base de criterios de probabilidad". Regla 10(F). Así, la Regla 79 de dicho cuerpo exime de evidencia extrínseca de autenticación, como condición previa a su admisibilidad, todo documento debidamente reconocido si "el certificado cumple con los requisitos pertinentes en ley relativos a certificaciones, par-

ticularmente con las disposiciones sobre derecho notarial". Si el documento cumple con todas las normas y formalidades de redacción y suscripción es, prima facie, auto-auténtico. No precisa de testimonio o evidencia adicional para su admisibilidad. El proponente del documento puede descansar en esa presunción de autenticidad y correspondería a su opositor destruir esa característica.

En lo pertinente, la Ley de 12 de marzo de 1903, regulatoria de la forma y manera de prestarse una declaración jurada (afidávit), en su Art. 3 prescribe que "se harán constar por escrito y *serán firmadas por las personas que las hicieren*". (Énfasis suplido.) 4 L.P.R.A. sec. 883. Complementa esta disposición la Sec. 3 de la Ley de 12 de marzo de 1908, que exige que los afidávit de autenticidad contengan una numeración sucesiva y continua que será encabezada por el número correspondiente y correlativo al de la inscripción en el Registro de Afidávit dispuesto en la Sec. 5 de la misma ley. Finalmente, su Sec. 8 apercibe que un afidávit *no* inscrito en dicho Registro o no incluido en el índice correspondiente será nulo. Nada dispone si falta la firma del funcionario autorizante. Distinto de la situación en que el otorgante no lo suscribe, es razonable concluir que si esa omisión es del funcionario otorgante, per se no lo invalida y puede ser subsanado.

Los preceptos y principios expuestos son de importancia al evaluar el planteamiento de la sucesión recurrente respecto a que el pagaré representativo de la supuesta obligación de su causante, Dr. Juan B. Moczó, —presentado en evidencia— no era admisible por carecer exclusivamente de la firma del notario Jorge M. Morales, ante quien alegadamente se otorgó. Aunque no tiene la firma notarial, dicho documento contiene el número de Registro de Afidávit del referido notario (72,745), y su sello notarial.

Ante la ausencia de la firma del notario, nos inclinaríamos a sostener el señalamiento de la sucesión. Sin embargo, notamos que de un análisis integral de toda la prueba que

tuvo ante sí el tribunal de instancia surgen ciertos indicadores para sostener que el mismo posee suficientes garantías de veracidad que militan en contra de la revocación, en esta etapa, de la sentencia. A tal efecto advertimos que dicho pagaré fue presentado en unión de ocho (8) más, además del suscrito por el Dr. J.E. Colón como Presidente de la deudora principal, también demandada, Oficinas Profesionales, Inc. Todos, excepto los que contienen la firma del notario, están firmados por Colón y por sus respectivos suscriptores. Dos están debidamente firmados por el notario Morales. Poseen número de afidávit y el sello notarial.

Estas circunstancias permitían, a nuestro juicio, que el tribunal de instancia estimara y concluyera en su ánimo que indirecta o circunstancialmente se probó que el causante Moczó suscribió el pagaré en cuestión, y que la sola omisión de la firma del notario no lo invalidaba ni afectaba en su sustancia su autoautenticidad y veracidad. Queda, sin embargo, el reclamo legítimo, *stricto jure*, de la sucesión. Aunque el 5 de agosto de 1981 expresó que no había formulado en tiempo su contestación a la demanda, pues estaba "en espera de que la parte demandante [le] contestara si aceptaba una oferta de transacción", al otro día la presentó, pero negó la existencia de dicha deuda. Ya había fallecido el doctor Moczó. Es perfectamente comprensible y legítima esa posición forense y explica los méritos del recurso de la sucesión ante nos. En última instancia, no puede descartarse la posibilidad de que, más que una simple omisión, el pagaré nunca fuera suscrito por el causante doctor Moczó o que si lo hizo no fuera ante el notario Morales. Esta última posibilidad derrotaría ipso jure su autoautenticidad y la parte actora tendría que recurrir a otros medios supletorios para probar su contención. Ello ciertamente es un obstáculo para que prevalezca la sentencia.

Por otro lado, según también indicamos, del análisis integral de toda la evidencia documental surgen circunstancialmente ciertos indicadores, algunos fuertes, de que

probablemente fue suscrito por el causante ante el notario Morales —al igual que lo hicieron algunos de los otros deudores— y que podría tratarse de una mera omisión subsanable.

Más que simples conjeturas, "a base de criterios de probabilidad" ambas posiciones son atendibles. Ante esta encrucijada, en un balance justiciero, nos inclinamos a resolver que procede la devolución del caso al foro de instancia para que las partes diluciden la legitimidad del documento o la certeza de la obligación, a través de los distintos medios disponibles.

Se expide el auto y se dicta sentencia en que se devuelve el caso al Tribunal Superior, Sala de San Juan, para trámites compatibles con lo expuesto.

Así lo pronunció y manda el Tribunal y certifica la señora Secretaria. El Juez Asociado Señor Irizarry Yunqué emitió opinión disidente.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria General*

—O—

Opinión disidente del Juez Asociado Señor Irizarry Yunqué.

La decisión que hoy toma este Tribunal trastoca el principio adversativo en que descansa el sistema judicial y, en cuanto al Derecho probatorio, pone en entredicho nada menos que la necesidad de la firma del funcionario ante quien se suscribe un documento a los fines de su autenticidad. Por ello disiento.

El Banco Gubernamental de Fomento demandó a Oficinas Profesionales, Inc. y a varias personas naturales en cobro de $518,625.07, suma a la que, según alegó, estaba reducida una deuda de la corporación demandada, representada por un pagaré por $735,000. Reclamó además el pago de intereses y $73,500 pactados para costas, gastos y honorarios de abogado. La deuda estaba garantizada mediante hipoteca, cuya ejecución se solicitó en la demanda.

Entre las personas naturales incluidas como demandados aparecen Juan Moczó Aliaga, Isabel Moczó Aliaga y Pilar Aliaga viuda de Moczó, como miembros de la sucesión de Juan B. Moczó. Se predicó la causa de acción contra éstos en la alegación de que su causante, Dr. Juan B. Moczó, garantizó personalmente la obligación de Oficinas Profesionales, Inc. hasta el 5.67 por ciento del principal, más intereses, costas, gastos y honorarios de abogado. Dichos codemandados negaron dicha alegación en su contestación a la demanda. Recurren de sentencia en su contra.

La única prueba presentada durante el juicio, en lo que concierne a la responsabilidad de los aquí recurrentes, consistió en el pagaré por $735,000 y un documento en que, según se alegó, el Dr. Juan B. Moczó garantizó personalmente la deuda hasta el 5.67 por ciento. El documento contiene el nombre del doctor Moczó al calce en manuscrito y el nombre, también en manuscrito, como testigo, de J.E. Colón, M.D. Contiene un número de afidávit y el sello notarial del notario Jorge M. Morales. No aparece la firma del notario. Éste no fue llamado a declarar en el juicio. Tampoco declaró el "testigo" del documento, J.E. Colón, M.D. Los demandados, aquí recurrentes, que negaron la alegación de la demanda que responsabilizaba a su causante, objetaron la admisibilidad del descrito documento. Entiendo que no fue autenticado y era, por tanto, inadmisible.

Este Tribunal elabora unas expresiones a mi juicio un tanto confusas sobre el requisito de la firma del notario autorizante de un documento a los fines de su autenticidad. Parece dar más importancia a que el documento tenga un número de afidávit y el sello de un notario, que al requisito de la firma del notario. A mi juicio la firma del notario es el elemento más importante para la autenticidad del documento. El número del afidávit y el sello del notario los puede poner la secretaria. La firma del notario solamente él puede ponerla. El notario es el depositario de la fe pública. Es el testigo fedatario que el Estado provee para dar auten-

ticidad a los instrumentos que han de dar fe de su propia autenticidad. Francamente no comprendo el malabarismo en que se ha confundido este requisito esencial. El número del afidávit y la impresión del sello son accesorios. La firma del notario es lo principal.

Hay algo más en este caso que, en vez de fortalecer, debilita la autenticidad que se le pretende dar al documento. El notario Morales firmó todos los afidávit que los otros garantizadores otorgaron, y en ninguno de ellos aparece la firma de J.E. Colón. Únicamente aparece la supuesta firma de J.E. Colón en el documento que está huérfano de la firma del notario Morales. Me resisto a creer que un número de afidávit y el sello del notario Morales convirtieron ipso facto a J.E. Colón, M.D. en depositario de la fe pública notarial e hicieron autoautenticable el documento.

La conclusión final de este Tribunal, de remitir a instancia para que "las partes diluciden la legitimidad del documento" sienta, a mi juicio, un mal precedente. Hay unas reglas de juego: en este caso, las Reglas de Evidencia. El Banco Gubernamental de Fomento, que no es una entidad indigente, representado por competentes abogados, no probó bajo esas reglas que el doctor Moczó firmara el documento de garantía. Este Tribunal reabre el caso para permitir que ahora traten de probar, si pueden, lo que no pudieron o no quisieron o no supieron probar.

Por último, debo consignar mi preocupación de que en la sentencia del Tribunal se haga referencia a una oferta de transacción para, sin decirlo expresamente, poner en duda la validez de la posición de los recurrentes de negar la alegada deuda de su causante, el doctor Moczó. Hace más de siete décadas dejó sentado este Tribunal el principio de que una oferta de transacción no aceptada no es admisible como un reconocimiento de responsabilidad. *Pérez* v. *Guánica Centrale*, 17 D.P.R. 963, 969 (1911). Señalamos que la oferta de transacción hecha por el demandado "a lo sumo lo que significa es que desea evitar el pleito o su continuación, por

lo que tal clase de prueba nunca debe ser permitida por los tribunales". Esta norma ha sido consistentemente seguida. Véanse: *Díaz* v. *Arroyo*, 50 D.P.R. 319, 323 (1936); *Pueblo* v. *Central Cambalache*, 59 D.P.R. 60, 74 (1941); *Rodríguez* v. *Great Am. Indemnity Co.*, 63 D.P.R. 605, 610, 611 (1944); *Pueblo* v. *Ruiz*, 83 D.P.R. 349, 354 (1961). En 1979 dicha norma fue incorporada como Regla 22(B) de las vigentes Reglas de Evidencia. ¿Son esta norma y la falta de autenticidad del documento *tecnicismos* que deben echarse a un lado *en este caso*?

Yo no creo que los tecnicismos deben derrotar el logro de la justicia. Pero creo también que en un régimen de ley se excusa, y se justifica, que nos apartemos de los tecnicismos únicamente para dar otra oportunidad de que se haga justicia al débil, al que no puede pagar un buen abogado. Esa no es la condición del recurrido en este caso.